UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMONE RULE | Case No. 16-cr-00420<br><br>Judge John Robert Blakey |

### MEMORANDUM OPINION

On June 28, 2016, Defendant Demone Rule ("Defendant") was indicted for unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Indictment [1]. The firearm at issue was allegedly recovered from Defendant's waistband following a December 27, 2015 traffic stop that ultimately resulted in his arrest.

On November 21, 2016, Defendant moved to quash his arrest and suppress all subsequently derived evidence, including the firearm and incriminating statements Defendant made to police. Def.'s Mot. Quash & Supp. [17]. Defendant claimed that his traffic stop and ensuing arrest were unlawful under the Fourth Amendment, and consequently, all evidence derived therefrom constituted "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963), and its progeny.

The Court held an evidentiary hearing on March 13, 2017, during which it heard sworn testimony from Defendant and the three police officers involved in Defendant's arrest. At the conclusion of the hearing, after considering the parties'

written submissions [17, 21] and oral arguments, the Court orally denied Defendant's motion. This Memorandum Opinion supplements the Court's oral ruling.

The Court makes the following findings of fact and conclusions of law based upon the evidence introduced at the evidentiary hearing:

**I.     Findings of Fact**

1.     On the evening of December 27, 2015, Defendant entered his car, which was located in a parking lot at the intersection of West Madison Street and South Lotus Avenue in Chicago, Illinois. Tr. [25] 3:11-19.

2.     After entering his vehicle, Defendant drove out the south exit of the parking lot, into the alley bounded by West Madison Street to the north, West Monroe Street to the south, South Lotus Avenue to the east, and South Central Avenue to the west. *Id*. at 3:20-23, 15:19-16:21.

3.     On the evening of December 27, 2015, Chicago Police Department Officers Andrew Hamick, Joseph Ramirez, and Kevin Graney were patrolling Chicago's 15th District in a single police vehicle in the vicinity of the 5500 block of West Madison Avenue. *Id*. at 29:2-8, 43:5-10, 54:8-10, 67:7-10, 78:8-17.

4.     Officer Ramirez was driving the police vehicle. Officer Graney was sitting in the front passenger seat. Officer Hamick was sitting in the rear passenger compartment. *Id*. at 29:9-12, 54:14-15, 66:17-23, 77:24-25.

5. The vehicle used by Officers Hamick, Ramirez, and Graney was unmarked, but possessed working emergency lights and sirens. *Id.* at 29:13-15, 42:10-15, 66:13-16, 77:18-21.

6. During the course of their patrol, Officers Hamick, Ramirez, and Graney entered the western ingress of the alley bounded by West Madison Street to the north, West Monroe Street to the south, South Lotus Avenue to the east, and South Central Avenue to the west. *Id.* at 43:11-14, 67:11-17, 78:14-15.

7. As the officers proceeded eastbound in the alley, Officers Hamick and Ramirez observed Defendant's vehicle exit the parking lot in front of their police vehicle and proceed eastbound. *Id.* at 29:18-30:23, 43:15-44:1, 78:18-79:8.

8. As Defendant and the officers proceeded eastbound, Officers Hamick, Ramirez, and Graney observed Defendant cross South Lotus Avenue and enter the western ingress of the alley bounded by West Madison Street to the north, West Monroe Street to the south, South Lockwood Avenue to the east, and South Lotus Avenue to the west. *Id.* at 44:2-8, 54:16-22, 67:22-68:5, 79:9-12.

9. Officers Hamick, Ramirez, and Graney followed Defendant across South Lotus Avenue. *Id.* at 44:9-10, 68:11-12.

10. Officers Hamick, Ramirez, and Graney then observed Defendant drive through the alley and exit the eastern egress of the alley onto South Lockwood Avenue. *Id.* at 44:15-20, 45:11-12, 68:13-16, 79:9-19.

11. Between the time that Defendant crossed South Lotus Avenue until he exited the alley onto South Lockwood Avenue, Officers Hamick, Ramirez, and

3

Graney did not observe Defendant park or stop to load or unload passengers or goods. *Id*. at 32:11-22, 44:23-25, 68:17-24, 79:20-24.

12. Officers Hamick, Ramirez, and Graney observed Defendant, upon reaching South Lockwood Avenue, exit the alley and proceed south on South Lockwood Avenue. *Id*. at 45:15-16, 79:9-12.

13. After Defendant turned onto South Lockwood Avenue, Officers Hamick, Ramirez, and Graney determined that Defendant had unlawfully utilized the alley as a throughway. *Id.* at 45:13-14, 69:7-9, 80:5-7.

14. As Defendant proceeded south on South Lockwood Avenue, Officer Ramirez activated the police vehicle's emergency lights and sirens. *Id*. at 45:15-17, 69:15-18, 80:8-11, 89:9-14.

15. After Officer Ramirez activated the police vehicle's emergency lights and sirens, Defendant pulled to the western side of South Lockwood Avenue, between West Adams Street and West Quincy Street, and stopped his vehicle. *Id.* at 45:18-23, 69:19-70:6, 80:8-20.

16. After Defendant stopped his vehicle, Officers Hamick, Ramirez, and Graney exited their police vehicle and approached Defendant's vehicle on foot. *Id.* at 45:24-46:1, 70:7-8, 80:21-23.

17. At the time, Officers Hamick, Ramirez, and Graney were each wearing variations of the standard Chicago Police Department uniform. *Id.* at 42:8-9, 42:17-20, 56:22-23, 66:6-12, 70:9-10, 77:12-17.

18. As Officers Hamick, Ramirez, and Graney approached Defendant's vehicle, Defendant drove off and fled southbound on South Lockwood Avenue. *Id.* at 46:2-6, 70:11-15, 80:24-81:4.

19. After Defendant drove away, Officers Hamick, Ramirez, and Graney returned to their police vehicle to give chase. *Id.* at 46:7-8, 70:16-18, 81:5-6.

20. There is a stop sign located at the intersection of South Lockwood Avenue and West Jackson Boulevard. *Id.* at 46:14-15, 70:19-21, 81:14-15, 89:15-18.

21. When Defendant reached the intersection of South Lockwood Avenue and West Jackson Boulevard, Defendant turned west onto West Jackson Boulevard. *Id.* at 46:9-13, 70:19-21, 81:9-11.

22. Officers Hamick, Ramirez, and Graney observed Defendant disregard the stop sign prior to turning west onto West Jackson Boulevard. *Id.* at 46:16-24, 70:19-21, 81:16-17, 82:4-7.

23. Soon after Defendant turned west onto West Jackson Boulevard, he stopped his vehicle in the middle of the roadway, exited the driver's door, and fled on foot southbound across West Jackson Boulevard. *Id.* at 46:25-47:3, 71:3-72:4, 81:23-82:23.

24. After Defendant exited his vehicle, Officers Hamick, Ramirez, and Graney exited their police vehicle and continued their pursuit on foot. *Id.* at 33:9-22, 47:4-5, 56:12-19, 72:5-6, 82:24-25.

25. As Officers Hamick, Ramirez, and Graney chased Defendant on foot, Officer Graney verbally identified himself as a police officer. *Id.* at 56:24-57:1.

26. Officers Hamick, Ramirez, and Graney caught up to Defendant in a vacant lot within the 5300 block of West Jackson Boulevard. *Id.* at 47:8-9, 83:11-12.

27. Once Officers Hamick, Ramirez, and Graney caught up to Defendant, Officer Ramirez immediately placed Defendant in handcuffs. *Id.* at 33:23-24, 47:17-20, 83:13-17, 90:9-13.

28. Once Officer Ramirez placed Defendant in handcuffs, Defendant was under arrest. *Id.* at 35:18-19, 83:15-19.

29. After Defendant was placed in handcuffs, Officer Ramirez asked Defendant why he ran from police. *Id.* at 33:25-34:4, 48:3, 90:19-23.

30. Officer Ramirez did not provide *Miranda* warnings to Defendant before asking him why he ran from police. *Id.* at 34:12-16, 48:13-15, 90:14-18; *Miranda v. Arizona*, 384 U.S. 436 (1966); *Dickerson v. U.S.*, 530 U.S. 428 (2000).

31. After Officer Ramirez asked Defendant why he ran from police, Defendant told Officer Ramirez that he was on parole and had a firearm in his left front waistband. *Id.* at 48:3-9, 83:20-24.

32. During the course of Defendant's arrest and Officer Ramirez's on-scene questioning, Officers Hamick, Ramirez, and Graney did not physically abuse or psychologically intimate Defendant or improperly engage in any deceptive interrogation tactics. *Id.* at 50:2-11, 72:16-25, 84:3-11.

33. After Defendant told Officer Ramirez that he had a firearm, Officer Hamick retrieved a firearm from Defendant's left front waistband. *Id.* at 49:6-8, 83:25-84:2, 84:12-14.

6

34. It is standard operating procedure for Chicago police officers to perform a "patdown" search of an arrestee for weapons, regardless of whether the arrestee admits to being armed. *Id.* at 48:16-49:1, 73:17-74:4, 85:14-19.

35. Even if Defendant had not informed Officer Ramirez that he was in possession of a firearm, Officer Hamick would have conducted a patdown search of Defendant, pursuant to standard operating procedure. *Id.* at 49:2-5, 85:7-13.

36. After Defendant was placed under arrest, he was transported by Officers Hamick and Ramirez in the unmarked police vehicle to the 15th District station. Officer Graney followed the police vehicle driving Defendant's vehicle. *Id.* at 57:25-58:1, 84:15-16.

37. During Defendant's transport to the 15th District station, Defendant made additional statements to Officers Hamick and Ramirez.[1] *Id.* at 36:7-9.

38. At the time Defendant made statements to Officers Hamick and Ramirez during Defendant's transport to the 15th District station, he still had not received *Miranda* warnings. *Id.* at 36:10-11, 90:24-91:4.

39. During Defendant's transport to the 15th District station, Officers Hamick, Ramirez, and Graney did not physically abuse or psychologically intimidate Defendant or improperly engage in deceptive interrogation tactics. *Id.* at 50:2-11, 72:16-25, 84:3-11.

---

[1] During the evidentiary hearing, no evidence was introduced regarding the content of these statements. Similarly, no evidence was introduced to explain whether the statements were the result of further police questioning or rather spontaneous admissions by Defendant. Such facts, however, are unnecessary for the purposes of the Court's analysis.

40. After arriving at the 15th District station, Officer Hamick gave Defendant *Miranda* warnings for the first time. Specifically, Officer Hamick orally informed Defendant that: (1) he had the right to remain silent; (2) anything Defendant said could and would be used in a court of law; (3) Defendant had a right to an attorney; and (4) if Defendant could not afford an attorney, the courts would appoint one to him free of charge. *Id.* at 36:12-18, 38:1-18, 49:9-11, 51:15-52:6, 84:17-20.

41. After Officer Hamick provided Defendant *Miranda* warnings, Defendant agreed to speak with Officers Hamick and Ramirez. *Id.* at 49:12-13, 84:21-22.

42. During his interview, Defendant admitted to Officers Hamick and Ramirez that he drove through the alley "because it was faster" and that he bought the firearm found in his waistband on the street a few weeks earlier because the barbershop where he worked had been robbed. *Id.* at 49:17-50:1, 85:1-6.

**II. Conclusions of Law**

    **A. Defendant's Initial Traffic Stop Did Not Violate the Fourth Amendment**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Temporary detention of individuals during the stop of an automobile, "even if only for a brief period and for a limited purpose," constitutes a seizure. *Whren v. United States*, 517 U.S. 806, 809 (1996). Thus, an automobile stop must not be "unreasonable" under the circumstances. *Id.* at 810.

Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*

Probable cause "does not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)). Although probable cause requires "something more than a hunch," it does not require a finding "that it was more likely than not" that an individual has engaged in unlawful activity. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). The inquiry is an objective one; the subjective motivations of the officer do not invalidate a seizure otherwise supported by probable cause. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). Applied to a traffic stop, as long as the circumstances "support the reasonable belief" that a driver has committed a traffic offense, "the officer has probable cause to stop the driver." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

The Chicago Municipal Code prohibits the operation of "any motor vehicle on an alley" other than "for the purpose of gaining access to or leaving" adjacent property. Chi., Ill., Code § 9-20-010 (2016). The operation of a vehicle in an alley "without parking, or without stopping to load or unload passengers or goods" constitutes prima facie evidence of a violation. *Id.*

Here, Officers Hamick, Ramirez, and Graney each observed Defendant: (1) enter the western ingress of the alley bounded by West Madison Street, West Monroe Street, South Lotus Avenue, and South Lockwood Avenue; (2) drive the entire length of the alley; and (3) exit the eastern egress of the alley onto South

...
...

Lockwood Avenue. During that time, Officers Hamick, Ramirez, and Graney did not observe Defendant park or stop his vehicle to load or unload passengers or goods. From these observations, it was objectively reasonable for the officers to believe that Defendant unlawfully utilized the alley as a throughway. Accordingly, the initial traffic stop of Defendant's vehicle on South Lockwood Avenue was reasonable under the Fourth Amendment.

During the evidentiary hearing, Defendant testified that, contrary to the officers' observations, he *did* attempt to park in the alley in order to visit the nearby home of the mother of one of his children. Tr. [25] 5:2-21. Defendant claimed that he demonstrated his intent by activating his turn signal and turning into an alley parking lot. *Id.* at 6:1-13. Defendant stated that upon turning, however, he discovered a van blocking the parking lot entrance. *Id.* at 5:22-25, 20:17-23. According to Defendant, he then reversed back into the alley and continued east to South Lockwood Avenue to locate another parking space. *Id.* at 6:14-17.

Based upon the record, including the Defendant's manner while testifying, this Court found Defendant's testimony on this issue lacked any credibility.[2] Sworn testimony from Officers Hamick, Ramirez, and Graney—who each observed Defendant drive straight through the alley—directly contradicted Defendant's version of events. Furthermore, on cross-examination, Defendant could not state the address of his child's mother, nor describe the general location of the house in

---

[2] Indeed, in assessing the reasonableness of Defendant's entire testimony in light of all the evidence, this Court finds that the Defendant perjured himself on multiple occasions during the hearing.

relation to the alley. *Id.* at 19:5-18. Combined with Defendant's other false testimony described below, Defendant's self-serving story was not worthy of belief.

### B. Defendant's Subsequent Arrest Did Not Violate the Fourth Amendment

A "warrantless arrest, like a warrantless search, must be supported by probable cause." *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996). Probable cause to justify an arrest exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Once again, this is a "purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Id.* In other words, although the Court "focuses on what the officer knew at the time of the arrest," it must determine "whether those facts and circumstances, 'viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *Id.* (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)). If this test is met, an officer may arrest the offender without violating the Fourth Amendment, even if the individual has only committed "a very minor criminal offense." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Here, at the time of Defendant's arrest, Officers Hamick, Ramirez, and Graney had observed Defendant: (1) utilize an alley as a throughway; (2) flee the police both by vehicle and on foot; (3) disobey a stop sign; and (4) abandon his vehicle in the middle of the road. Under the circumstances, an objectively

reasonable officer possessed probable cause to believe that Defendant committed a myriad of criminal offenses. *See, e.g.,* Chi., Ill., Code § 9-20-010 (2016) ("One-way streets – Through traffic prohibited on certain public ways"); 625 ILCS § 11/204 ("Fleeing or attempting to elude a peace officer"); 625 ILCS § 5/11-305 ("Obedience to and required traffic-control devices"); 625 ILCS § 5/11-1301 ("Stopping, standing, or parking outside of business or residence district"). Thus, Defendant's arrest was lawful.

At the evidentiary hearing, Defendant denied that officers attempted to curb his vehicle on South Lockwood Avenue or that he disobeyed any traffic signs. Tr. [25] 7:25-8:4, 8:8-15, 22:22-23:10. According to Defendant, he was driving normally and did not notice police until he parked his vehicle on West Jackson Boulevard and crossed the street to enter his uncle's house. *Id.* at 8:19-9:1. Defendant alleged that at that point, Officers Hamick, Ramirez, and Graney approached him, and, without warning, punched him three times and threw him into a puddle. *Id.* at 9:2-10:14. Defendant further maintained that he never made any incriminating statements and that the officers, in fact, never actually recovered a firearm from his person. *Id.* at 11:8-13, 11:19-24.

Once again, such testimony flew in face of the record before the Court and possessed no credibility. Not only did Officers Hamick, Ramirez, and Graney contradict Defendant's narrative, but Defendant's own purported destination at the time of his arrest—his uncle's house—directly undermined his earlier statement that he meant to find a parking space to visit his child's mother.

12

In sum, the Court found that both Defendant's initial traffic stop on South Lockwood Avenue and his subsequent arrest on West Jackson Boulevard were supported by probable cause and reasonable under the Fourth Amendment.

### C. Defendant's Incriminating Statements

#### 1. Defendant's Pre-*Miranda* Statements are Inadmissible, but Do Not Require Suppression of Subsequent Evidence

The Court addresses one other substantive area. As outlined above, Defendant made multiple incriminating statements to police, both at the scene of his arrest and at the 15th District station. Defendant's statement at the scene, however, was made before Defendant received proper *Miranda* warnings.

Under the Supreme Court's ruling in *Miranda v. Arizona,* 384 U.S. 436 (1966), the admissibility of a custodial statement is conditioned upon a precedent warning from law enforcement regarding the suspect's rights against self-incrimination. Failure by law enforcement to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

Here, Defendant was in custody at the moment Officer Ramirez placed him in handcuffs. *See United States v. Wilson*, 2 F.3d 226, 231 (7th Cir. 1993) ("There can be little question that a suspect placed in handcuffs is not free to leave and, for all practical purposes, is in police custody."). It is further undisputed that, prior to his interview at the 15th District station, Officers Hamick, Ramirez, and Graney did not provide Defendant *Miranda* warnings. As a result, Defendant's on-scene admission that he was on parole and had a firearm in his left front waistband, as

13

well as his statements made during transport to the 15th District station, are inadmissible. Counsel for the government conceded as much at the evidentiary hearing by proffering that the United States does not intend to offer Defendant's pre-*Miranda* statements at trial. Tr. [25] 40:9-15.

The inadmissibility of Defendant's on-scene admission, however, does not contaminate the firearm subsequently discovered in Defendant's waistband. The failure to provide a suspect with *Miranda* warnings does not require the suppression of physical fruits of the suspect's unwarned but voluntary statements. *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion); *United States v. Renken*, 474 F.3d 984, 988 (7th Cir. 2007). A confession is voluntary if, "in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Abdulla*, 294 F.3d 830, 836 (7th Cir. 2002) (quoting *United States v. Dillon,* 150 F.3d 754, 757 (7th Cir. 1998)). Coercive police activity "is a necessary predicate" to a finding that a confession is not voluntary. *Id.* No such coercion was present here. Consequently, the Court concluded that Defendant's on-scene admission, while unwarned, was nonetheless voluntary.

Moreover, even if this were not the case, under the doctrine of inevitable discovery, illegally obtained evidence will not be excluded if the government can prove, by a preponderance of the evidence, that officers would have "ultimately or inevitably" discovered the challenged evidence by lawful means. *Nix v. Williams,*

467 U.S. 431, 444 (1984). To satisfy this burden, the government must show that: (1) it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; and (2) it would have conducted a lawful search absent the challenged conduct. *United States v. Marrocco*, 578 F.3d 627, 637-38 (7th Cir. 2009). The government satisfied both criteria in this case. Officers Hamick, Ramirez, and Graney each testified that it is standard operating procedure for Chicago police officers to perform a "patdown" search of an arrestee for weapons, regardless of whether the arrestee admits to being armed. Officers Hamick and Ramirez further testified that, pursuant to this policy, they would have conducted a patdown search of Defendant even if Defendant had not informed Officer Ramirez that he was in possession of a firearm. It "is well established that after an officer makes a lawful arrest, he may conduct a warrantless search of the arrestee's person incident to that arrest." *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002). The firearm at issue would have been lawfully discovered during such a search.

### 2. Defendant's Post-*Miranda* Statements are Admissible

Defendant *was* provided *Miranda* warnings before his interview at the 15th District station. At the evidentiary hearing, Defendant made clear that, other than his assertion that his post-*Miranda* admissions constituted "fruit of the poisonous tree," he was not making an independent constitutional challenge to the statements. Tr. [25] 101:18-102:2. Because the Court found Defendant's traffic stop

15

and arrest constitutional, Defendant's argument failed, and Defendant's post-*Miranda* statements were not suppressed.

Even if Defendant *had* raised an independent constitutional claim, it would not have altered the Court's ultimate conclusion. The fact that a *Miranda* violation is found "does not render all later statements automatically inadmissible." *United States v. Ambrose*, 668 F.3d 943, 955 (7th Cir. 2012). Rather, subsequent statements by a suspect "not made in response to unwarned custodial interrogation can be admissible in certain circumstances." *Id.*

Four cases govern the Seventh Circuit's approach to this issue: *Oregon v. Elstad*, 470 U.S. 298 (1985); *Missouri v. Seibert*, 542 U.S. 600 (2004) (plurality opinion); *United States v. Stewart*, 388 F.3d 1079 (7th Cir. 2004) ("*Stewart I*"); and *United States v. Stewart*, 536 F.3d 714, 718 (7th Cir. 2008) ("*Stewart II*"). In *Elstad*, the Supreme Court held that the admissibility of a post-warning confession obtained after an earlier, unwarned inculpatory statement turns upon whether the pre- and post-warning statements were voluntary. 470 U.S. at 310-11. If the unwarned, first statement is voluntary, then the second statement is admissible, provided it too is voluntary and obtained in compliance with *Miranda*. *Id.* at 318. If the unwarned, first statement is involuntary, however, the admissibility of the second, warned statement depends upon whether there is a sufficient separation in time and circumstances between the first and second statements such that the coercive taint of the former does not carry over to the latter. *Id.*

16

In *Seibert,* the Court examined *Elstad*'s application to a so-called "two-step" interrogation process, during which *Miranda* warnings are deliberately delivered mid-interrogation after an initial and unwarned inculpatory statement by the suspect. 542 U.S. at 604. Although the Court ultimately suppressed the specific unwarned statement at issue, it did not achieve a majority opinion regarding how future sequential interrogations should be evaluated.

In *Stewart I*, the Seventh Circuit reconciled *Seibert*'s plurality and concurring opinions. Under *Stewart I*'s interpretation, *Seibert* altered *Elstad*'s approach in certain respects. In cases *not* involving the deliberate use of a two-step interrogation, *Stewart I* held that "*Elstad* appears to have survived *Seibert*." 388 F.3d at 1090. When a deliberate two-step interrogation *is* employed, "the central voluntariness inquiry of *Elstad* has been replaced by a presumptive rule of exclusion." *Id*. This presumption can be overcome, however, by a "change in time, place, and circumstances from the first statement to the second," *id.*, such that "a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning." *Id*. at 1089 (quoting *Seibert*, 542 U.S. at 622). This multifactor test examines, *inter alia*, "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Seibert*, 542 U.S. at 615.

The Seventh Circuit reaffirmed this interpretation four years later in *Stewart II*, and further declared that the issue of whether the police deliberately used a two-step interrogation method "is a factual inquiry." 536 F.3d at 719. Under *Stewart II*, where a defendant's confession is obtained during a sequential interrogation "with *Miranda* warnings delivered midstream," the government bears the burden of proving that police "did *not* deliberately withhold the warnings until after they had an initial inculpatory statement in hand." *Id.* (emphasis in original).

Here, the government did not introduce any "deliberateness" evidence during the evidentiary hearing. Nevertheless, the Court found that, on the present record, the particular circumstances of this case satisfy the multifactor test outlined in *Seibert*. Admittedly, Defendant's post-*Miranda* interview occurred close in time to his arrest, and was conducted by two of the three officers present at the scene. On the other hand, Defendant's pre- and post-*Miranda* questioning occurred in two separate locations. Moreover, Defendant's first round of questioning was anything but "systematic" and "exhaustive," and was hardly managed with the "psychological skill" described in *Seibert*. 542 U.S. at 615. To the contrary, the evidence before the Court indicated that Officer Ramirez asked a single question in the immediate aftermath of a police pursuit. Such brevity left much "left unsaid," as shown by the distinct content of the two statements. *Id.* At the scene, Defendant merely alerted officers to his parole status and the presence of the firearm in his waistband. Defendant's post-*Miranda* statements significantly expounded upon these subjects by explaining the source of the firearm ("the streets"), the motive for its purchase

18

(the prior robbery of Defendant's barber shop), and the timeline of its acquisition (a few weeks prior to Defendant's arrest). Defendant's station interview also delved into entirely *new* topics, including Defendant's alleged use of the alley as a throughway. In short, Officer Ramirez's singular question at the scene presented "a markedly different experience" from Defendant's formal interrogation at the 15th District station, and it would have been unreasonable for Defendant to regard the two sessions "as parts of a continuum." *Id*. at 615, 617. As a result, the *Miranda* warnings delivered by Officer Hamick "midstream" were "effective enough to accomplish their object." *Id*. at 621.

### III. Conclusion

Defendant's Motion to Quash Arrest and Suppress Evidence [17] was denied for the reasons stated above.

Date: April 3, 2017

ENTERED:

*[signature]*

United States District Judge